UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IELIOT JACKSON,                   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.                                ) | 20 C 5886 |
| ) | |
| CITY OF CHICAGO, et al.,           ) | Judge Charles P. Kocoras |
| ) | |
| Defendants.  ) | |

**MEMORANDUM OPINION**

**CHARLES P. KOCORAS, District Judge:**

This matter is before the Court on Defendant City of Chicago's ("City") Motion to Dismiss [ECF No. 27] and the Motion to Dismiss filed by Defendants Clark Eichman, Michael Santos, Peter Fleming, Charlie Person, Orlando Calvo, John Dal Ponte, and P. Williams (collectively, the "Officer Defendants") [ECF No. 20]. For the reasons set forth below, the Court grants in part and denies in part the City's Motion and denies the Officer Defendants' Motion.

**BACKGROUND**

For the purposes of these motions, the Court accepts as true the following facts from the Complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Jackson's favor. *League of Women Voters of Chicago v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014). On June 24, 2009, Jackson was arrested by Calvo and Dal Ponte for allegedly selling heroin to undercover Chicago

Police Department ("CPD") Officers Fleming and Eichman on four separate occasions: June 4, June 11, June 13, and June 17, 2009. Jackson alleges Williams was also involved in the arrest.

Jackson denies selling drugs to anyone on the dates in question and claims there was neither probable cause nor reasonable suspicion to believe Jackson sold drugs to anyone on those dates. Jackson alleges that on May 30, 2009, Eichman had two separate interactions with two individuals near the 4800 block of West Superior in Chicago: a person on a BMX bicycle and Jackson. Jackson claims Eichman subsequently arranged to purchase heroin from the individual on the BMX bicycle, and that transaction took place on June 13, 2009. Jackson contends he was not involved in the heroin deal, but Eichman identified Jackson as the person who sold the heroin. Jackson further alleges that the actual heroin dealer, who Jackson identifies as Isaac Williams, was not part of the photo lineup presented to Eichman when he identified Jackson. Jackson asserts the Officer Defendants concealed the evidence that Isaac Williams was the actual heroin dealer and fabricated evidence by allegedly falsely identifying Jackson in the photo array.

The Cook County State's Attorney elected to try Jackson for the alleged June 13, 2009 heroin sale to Eichman. The trial took place from July 13, 2010 to July 14, 2010. Jackson was convicted of Delivery of a Controlled Substance within 1,000 Feet of Real Property Compromising a School contrary to 720 ILCS 570/407(b)(2) and was sentenced to 13 years in prison. Jackson was released on parole on March 16, 2016.

On September 20, 2018, Jackson's motion for a new trial was granted. The Cook County State's Attorney later gave formal notice on October 18, 2018, it would not prosecute Jackson for the alleged June 13, 2009 heroin sale, and the case against Jackson was dismissed *nolle prosequi*.

Jackson filed his eight-count Complaint on October 2, 2020. Against the Officer Defendants, the Complaint raises a number of claims under 42 U.S.C. § 1983, including False Arrest (Count I); Due Process/Concealment of Exculpatory Evidence/Fabrication of Evidence (Count II); Conspiracy (Count III); and Failure to Intervene (Count IV). Against the City, Jackson pursues theories of liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) (Counts V and VI), the state law doctrine of *respondeat superior* (Count VII), and state law indemnification (Count VIII).

With respect to Jackson's *Monell* claims, Jackson alleges the City's policies and customs were the moving force behind the misconduct alleged above by failing to "adequately train, supervise, investigate, punish and discipline prior instances of similar misconduct by CPD officers, leading CPD officers to believe their actions will never be scrutinized and, in that way, directly encouraging future constitutional violations such as those suffered by Mr. Jackson." Jackson also asserts the alleged misconduct detailed above was undertaken pursuant to the City's policies and customs of "pursuing convictions in reckless disregard of the truth by condoning CPD officers [sic] concealing exculpatory evidence and fabricating evidence in drug cases."

The Officer Defendants move to dismiss Counts I and II on the basis those claims are time-barred. The Officer Defendants also move to dismiss Counts III and IV because, in the absence of viable underlying constitutional claims, Jackson's derivative constitutional claims for conspiracy and for failure to intervene necessarily fail.

The City moves to dismiss Jackson's *Monell* claims (Counts V and VI) and vicarious liability claims (Counts VII and VIII). The City argues Jackson failed to establish any well-settled custom or practice sufficient to demonstrate municipal liability, and thus his *Monell* claims cannot stand. The City further contends Jackson cannot establish any valid constitutional injury caused by the Officer Defendants, thereby necessitating dismissal of Jackson's *respondeat superior* and indemnification claims.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to raise its right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

With this framework in mind, the Court addresses Defendants' Motions in turn.

### I. The Officer Defendants' Motion to Dismiss

To reiterate, the Officer Defendants move to dismiss Counts I through IV. The Court begins its discussion with Count I.

**A. Count I: False Arrest**

The Officer Defendants argue Count I should be dismissed as time-barred. In Illinois, the statute of limitations for Section 1983 claims is two years. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). But while state law determines the length of the limitations period for a Section 1983 claim, federal law determines the date of accrual of the cause of actions. *Id*. at 388. Defendants rely on *Wallace* in support of their claim that the statute of limitations on Jackson's Fourth Amendment false arrest claim began to run as soon as his arraignment and bond hearing took place. *Wallace* held that the two-year statute of limitations on a false arrest claim begins to run "at the time the claimant

becomes detained pursuant to legal process," such as when he "is bound over by a magistrate or arraigned on charges." 549 U.S. at 389, 397. In *Manuel v. Joliet*, 137 S. Ct. 911, 918 (2017) ("*Manuel I*"), however, the Supreme Court held that wrongful pretrial custody violates the Fourth Amendment "not only when it precedes, but also when it follows, the start of legal process in a criminal case."

Jackson, for his part, relies on the Seventh Circuit's ruling in *Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 668–70 (7th Cir. 2018) ("*Manuel II*"), where the court held that the wrong from an unlawful detention ends when the detention ends.[1] It is undisputed Jackson was released from custody on parole on March 16, 2016; however, Jackson argues his Fourth Amendment claim would have necessarily impugned his prosecution, urging the Court to conclude he could not have brought his claim until the favorable termination of his proceedings, not his release from custody.

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that a Section 1983 claim for damages that "necessarily impl[ies] the invalidity of [the plaintiff's] conviction or imprisonment" does not accrue until that conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal courts issuance of a writ of habeas corpus." *Heck* thus instructs that when a plaintiff seeks damages in a Section 1983 suit, the Court "must consider whether a

---

[1] Notably, the court only considered the wrong from an unlawful detention claim because the plaintiff did not appeal the dismissal of the false arrest claim. 903 F.3d at 669–70.

judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. at 487.

In *McDonough v. Smith*, 139 S. Ct. 2149, 2159 (2019), the Supreme Court expanded the reach of the *Heck* bar, holding *Heck* applies not only to a challenge to an extant criminal conviction or sentence, but also to a claim that "necessarily threatens to impugn . . . the prosecution itself." *McDonough*, 139 S. Ct. at 2159; *see also Savory v. Cannon*, 947 F.3d 409, 417 (7th Cir. 2020) ("There is no logical way to reconcile those claims with a valid conviction. Therefore, *Heck* supplies the rule for accrual of the claim.")

The Seventh Circuit recently observed that *Manuel II* does not, on its own, answer the question of whether a favorable termination of criminal proceedings is necessary for a statute of limitations to accrue on a Fourth Amendment Claim. *See Smith v. City of Chi.*, 3 F.4th 332, 340 (7th Cir. 2021) (noting that in *Manuel II*, by the time the plaintiff was released there was no prosecution his Section 1983 suit could impugn and therefore nothing that could bring the *Heck* rule into play). In *Smith*, the court explicitly held that "even when charges remain outstanding, a Fourth Amendment claim for unlawful pretrial detention accrues upon the plaintiff's release from detention, and not upon the favorable termination of the charges against the plaintiff." 3 F.4th at 339.

7

*Smith* noted the distinction between a due process claim and a Fourth Amendment claim: "[a] due process claim attacks the whole prosecution, while the Fourth Amendment claim—whether about a search, arrest, or pretrial detention—can sometimes be severed from the rest of the prosecution." *Id*. at 339–40. "At bottom," the court said, "the Court in *McDonough* did not explicitly overrule *Wallace's* holding that a Fourth Amendment claim is not barred by *Heck* even if it could possibly affect a future prosecution. We will not do so, either." *Id*. at 340.

In the Court's view, however, *Smith* is distinguishable on its facts and does not dictate the result in this case. In *Smith*, the Seventh Circuit pointed out the plaintiff's Fourth Amendment claim could be separated from the overall prosecution. *Id*. at 339. The allegedly fabricated evidence in the plaintiff's case was not used at his trial, and therefore "*Heck* would not require a court to bar Smith's claim if he had brought it immediately upon his release on bond." *Id*. In contrast, Jackson's conviction is inextricably tied up in his Fourth Amendment claim.

The Court finds persuasive Judge Feinerman's analysis in *Culp v. Flores*, 454 F. Supp. 3d 764 (N.D. Ill. 2020). In *Culp*, the plaintiff's Fourth Amendment claim alleged that the plaintiff committed no crime, that the defendants did not have any reason to believe the plaintiff violated any law, and that the defendants "based the arrest, detention and/or prosecution of [the plaintiff] on their false allegations, testimony and fabricated police reports." 454 F. Supp. 3d at 768. These allegations are akin to those presented in this case.

8

Citing *Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020), and *Sanders v. St. Joseph Cnty.*, 806 F. App'x 401 (7th Cir. 2020), Judge Feinerman concluded that success on the plaintiff's Fourth Amendment claim "would be incompatible with a conviction on the charges for which Culp was arrested, detained, and prosecuted," and therefore "there is no logical way to reconcile the claim with a valid conviction." *Culp*, 454 F. Supp 3d at 768–69 (quoting *Savory*, 947 F.3d at 417) (cleaned up). Consequently, because—due to the nature of the plaintiff's Fourth Amendment claim—a finding the plaintiff's detention in jail was unconstitutional would imply the invalidity of the charges brought against him, *Heck* barred the plaintiff's claim until the charges against him were dismissed. *Id*.

So too, here. Any legal challenge to Jackson's Fourth Amendment claim "would have automatically implicated the validity of [Jackson's] criminal convictions because both injuries are premised on the same set of facts." *See Serrano v. Guevara*, 2020 WL 3000284, at *18 (N.D. Ill. 2020). Accordingly, the statute of limitations on Jackson's Fourth Amendment claim did not begin to run until the criminal proceedings terminated in his favor.

But when did that occur in this case? Defendants advocate for September 20, 2018, the date Jackson's motion for a new trial was granted following an appeal process. Jackson, on the other hand, asserts his claim accrued on October 18, 2018, the date the circuit court issued a disposition of *nolle prosequi*. The Court agrees with Jackson.

9

Defendants rely principally on *Johnson v. Winstead*, 900 F.3d 428 (7th Cir. 2018), in support of their position. *Johnson*, however, pre-dates *McDonough*. *McDonough* held that *Heck* barred a plaintiff whose first trial ended in a mistrial, and who was then retried and acquitted, from bringing a fabricated evidence claim until "the underlying criminal proceedings ha[d] resolved in [his] favor," meaning until his acquittal—which in turn means that the claim did not accrue until that time. 139 S. Ct. at 2156. In the Court's view, prevailing on a motion for a new trial does not complete the story. Jackson was still subject to pending charges; the case against him was not conclusively terminated. Accordingly, Jackson's claim did not accrue until the entry of the *nolle prosequi* disposition, at which time the criminal proceedings were *fully* terminated.[2] *See Savory v. Cannon*, 2021 WL 1209129, at *4 (N.D. Ill. 2021) ("It follows that Savory's Fifth Amendment coerced confession claim accrued only once, when he received his pardon, because only then did the criminal proceedings fully resolve in his favor."). Therefore, the Officer Defendants' Motion to Dismiss Count I is denied.

---

[2] Although not raised by Defendants, the Court notes that at this stage of the litigation, the Court cannot find a fixed rule about whether *nolle prosequi* definitively constitutes termination in Jackson's favor. Rather, the circumstances under which the State withdraws the criminal proceedings are significant. *See Simenson v. City of Joliet*, 2019 WL 3716868, at *8 (N.D. Ill. 2019). Hence, at least for now, Jackson adequately alleges the prosecution was terminated in his favor because absent discovery we do not know the exact circumstances. More granularly, based on Jackson's Complaint, it is possible to infer the charges were resolved in favor of Jackson for reasons indicative of his innocence as opposed to other reasons like an agreement or compromise, misconduct to prevent trial, mercy requested or accepted, the institution of new criminal proceedings, or the impracticability of bringing the accused to trial. *See Simenson*, 2019 WL 3716868, at *8; *Harris v. Wainscott*, 2019 WL 1995270, at *3 (N.D. Ill. 2019).

### B. Count II: Due Process/Fair Trial

The parties do not appear to dispute that the statute of limitations on Jackson's Due Process claim began to run at the time the criminal proceedings were terminated in Jackson's favor. Given the Court's conclusion regarding the *nolle prosequi* disposition, the Officer Defendants' Motion to Dismiss Count II is also denied.

### C. Count III and Count IV

The Officer Defendants also move to dismiss Count III and Count IV on the basis there is no viable underlying constitutional claim. Having found Jackson has stated viable Section 1983 claims in Counts I and II, the Court denies the Officer Defendants' Motion to Dismiss as to Counts III and IV.

## II. The City of Chicago's Motion to Dismiss

To establish the City's liability for a Section 1983 claim under the *Monell* doctrine, Jackson must show: (1) a violation of his constitutional rights; (2) an injury; and (3) that the injury and violation of rights was directly caused by the City's own action or inaction. *Bd. of Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). Jackson must establish that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, [Jackson] must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the depravation of federal rights." *Id*. Jackson can establish such a causal link in one of three ways, by showing:

11

> (1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority.

*McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). In establishing the existence of such a policy or practice, it is insufficient to "splatter-paint a picture of scattered violations" through "collateral accusations of marginally related incidents." *Carter v. Morris*, 164 F.3d 215, 218-19 (4th Cir. 1999). A court should carefully consider *Monell* allegations to ensure a plaintiff is not "provid[ing] merely boilerplate *Monell* allegations in order to proceed to discovery in the hope of turning up evidence to support his accusation." *Kowalski v. Cnty. of DuPage*, 2013 WL 4027049, at *2 (N.D. Ill. 2013) (Kocoras, J.).

### A. Count V: Failure to Train, Supervise, and Discipline

Jackson alleges the City's training program was not adequate to train CPD supervisors and officers to properly handle recurring situations; the City failed to adequately supervise and discipline CPD officers; and the City's "policymakers knew it was highly predictable that exculpatory evidence would be concealed, evidence would be fabricated, and false arrests would occur . . . because there was a pattern of similar constitutional violations and because it was highly predictable even without a pattern of similar constitutional violations." Dkt. # 1, ¶ 144.

12

A claim based upon a failure to train or supervise a police force can be established with evidence of either "a failure to provide adequate training in light of foreseeable consequences" or a "failure to act in response to repeated complaints of constitutional violations by its officers." *See, e.g.*, *Somberger v. City of Knoxville*, 434 F.3d 1006, 1029–30 (7th Cir. 2006). A plaintiff pleading a claim premised on a failure to train an officer must meet a high threshold to establish the claim because "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Jones v. Hunt*, 2020 WL 814912, at *3 (N.D. Ill. 2020). "A municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact. Only then can such a shortcoming be properly thought of as a city policy or custom that is actionable under [Section] 1983." *Connick*, 563 U.S. at 61 (cleaned up).

The City argues Jackson makes no connection with the alleged lack of training or supervision and *his* alleged constitutional injuries. More specifically, the City complains Jackson did not allege the City failed to train its officers with respect to the use of photo arrays or even with respect to concealing or fabricating evidence. The City asserts Jackson's allegations that various reports and individuals have recognized the City has failed to hold officers accountable for general misconduct are insufficient to connect Jackson's alleged constitutional injuries to any failure to train, supervise, or discipline.

13

Jackson attempts to establish the existence of a widespread custom or practice primarily by relying on the findings of a U.S. Department of Justice ("DOJ") report, which include: the City has deficient accountability systems which contribute to the pattern or practice of CPD officer misconduct; the City fails to adequately train investigators to investigate CPD officer misconduct; a "code of silence" exists within the CPD, where CPD officers do not report the misconduct of fellow officers and/or lie about the misconduct of fellow officers; the City's system of discipline for officer misconduct lacks integrity and does not deter misconduct; CPD does not provide its officers and supervisors with adequate training; and CPD supervisors are not held accountable for failing to report CPD officer misconduct. Dkt. # 1, ¶¶ 89–98.

Jackson also alleges the City's policymakers have long been aware of the inadequacies in training, supervision, and discipline, yet have failed to take actions to remedy the problems (*id*. ¶¶ 76, 79); and there has been acknowledgement by City and other prominent officials of the "code of silence" within the CPD that encourages cover-ups of police misconduct (*id*. ¶¶ 88, 107). Jackson further points to the case of *Obrycka v. City of Chicago*, No. 07-cv-2372, where a jury found as of February 2007 "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence." *Id*. ¶ 87.

The Court concludes Jackson has failed to plead a *Monell* claim for failure to train or supervise. To adequately allege a *Monell* claim, Jackson cannot merely generally allege the City broadly had a policy that led to officer misconduct—he must

14

allege some factual details about the nature of the policy and how that policy led to his alleged constitutional deprivation. *See Carmona v. City of Chi.* ("*Carmona I*"), 2018 WL 306664, at *3 (N.D. Ill. 2018) (St. Eve, J.). For example, nowhere does Jackson allege what specific, relevant training was lacking. *See Foy v. City of Chi.*, 2016 WL 2770880, at *9 (N.D. Ill. 2016) (rejecting a *Monell* claim based on failure to train allegations because the allegations were boilerplate, failed to "articulate what specific training was lacking," and failed to support the inference the alleged lack of training caused the plaintiff's constitutional depravation³); *see also Hardy v. Wexford Health Sources, Inc.*, 2015 WL 1593597, at *14 (N.D. Ill. 2015) ("Absent allegations of what training [ ] was lacking and how that deficiency impacted [the plaintiff's] health or that of his fellow inmates, [the plaintiff] has failed to state a claim for deliberate indifference due to a failure to train.").

Further, Jackson's broad citation to the general findings of the DOJ Report, "without any allegations connecting the report findings to the misconduct alleged in his Complaint, is insufficient to support his *Monell* claim." *Carmona I*, 2018 WL 306664, at *3. Simply put, "[t]he DOJ report certainly identifies serious shortcomings in the CPD's supervisory systems, but the Court cannot countenance it as a mast key to unlock discovery's door for any *Monell* claim against the City, no matter how scantily the

---

³ *Foy* also rejected the plaintiff's boilerplate failure to discipline allegations, explaining that the plaintiff "never articulate[d] what the City's actual practice is for disciplining officers that engage the misconduct that allegedly occurred." 2016 WL 2770880, at *9.

15

plaintiff connects his claim to the report's findings." *Carmona v. City of Chi.* ("*Carmona II*"), 2018 WL 1468995, at *3 (N.D. Ill. 2018) (St. Eve, J.).

The allegations contained in Count V are "in no way tailored to identify particular police training procedures or policies." *Armour v. Country Club Hills*, 2014 WL 63850, at *7 (N.D. Ill. 2014). Indeed, the scope of the discovery relevant to his claims, if allowed to proceed, would be "boundless." *See id*. ("The problem with Armour's allegations is that they encompass virtually all the activities of a police department and every contact it has with the public. Armour has lumped together [a] myriad of 'customs' and 'policies,' and the scope of the discovery relevant to his claims is boundless."). To the extent Count V attempts to state *Monell* claims for a failure to train or supervise, those claims are dismissed, but without prejudice.

The failure to discipline claim, however, is a closer call. In addition to the findings from the DOJ report, Jackson alleges that over 99% of the time when a citizen complains about civil rights violations by CPD officers, the City sides with the officer and finds no violation. Dkt. # 1, ¶ 81. In 2005, only 5 of at least 1,592 civil rights complaints were sustained. *Id*. ¶ 82. And in 2006, only 12 out of at least 1,492 were sustained. *Id*. ¶ 83. Less than four percent of complaints against CPD officers were sustained from 2011 to 2012. *Id*. ¶ 84.

These statistics, taken as true for purposes of this Motion and coupled with Jackson's other allegations, lend credence to Jackson's claims of a widespread policy of failure to discipline. *See, e.g.*, *Baskins v. Gilmore*, 2018 WL 4699847, at *8 (N.D.

16

Ill. 2018); *Maglaya v. Kumiga*, 2015 WL 4624884, at *5 (N.D. Ill. 2015) ("Plaintiffs' claims that the City refuses to discipline officers for engaging in misconduct and that police officers operate under a code of silence, in combination, allow for a plausible inference that these practices emboldened Defendant officers to illegally seize Plaintiffs' dog in violation of the Fourth Amendment."); *Sassak v. City of Park Ridge*, 431 F. Supp. 2d 810, 816 (N.D. Ill. 2006) ("A failure-to-train or -discipline allegation often supports a finding of municipal liability because a policy of condoning abuse may embolden a municipal employee and facilitate further abusive acts."); *Obrycka v. City of Chi.*, 913 F. Supp. 2d 598, 604 (N.D. Ill 2012) (discussing jury's finding that a code of silence and/or policy of failing to discipline officers was the moving force behind off-duty officer's beating of plaintiff in violation of her right to bodily integrity). Read in the light most favorable to Jackson, the Court finds Jackson has adequately stated a *Monell* claim for failure to discipline in Count V.

### B. Count VI: Condonement of Concealing Exculpatory Evidence; Fabrication of Evidence

Jackson's *Monell* claim pertaining to the concealment of exculpatory evidence and the fabrication of evidence incorporates the previous allegations and adds a few more. More specifically, Jackson alleges that since 1986, there have been more than 100 cases where CPD officers fabricated evidence and/or concealed exculpatory evidence to cause the false arrest and subsequent convictions of innocent individuals. Dkt. # 1, ¶ 108. Jackson also points to numerous 2019 civil rights actions brought by

various plaintiffs against former CPD Sergeant Ronald Watts and other CPD members for concealing and fabricating evidence in drug cases (the "Watts actions"), as well as a 2020 civil rights action brought against the City and several CPD members alleging a long-standing pattern of CPD officers fabricating evidence, concealing exculpatory evidence, and conducting false arrests (the "Cruz action"). *Id*. ¶¶ 102, 106. Jackson alleges the City knew CPD officers engaged in a pattern of concealing and fabricating evidence in drug cases (facilitated by the "code of silence") yet took no action to prevent CPD officers from engaging in such practices. *Id*. ¶¶ 103–04.

While further information would be beneficial, the Court finds that, viewing the Complaint as a whole and in the light most favorable to Jackson, Jackson has pled sufficient facts to nudge his "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also, e.g.*, *Treadwell v. Salgado*, 2021 WL 3129290 (N.D. Ill. 2021). Therefore, the City's Motion to Dismiss Count VI is denied.

### C. Counts VII and VIII: *Respondeat Superior* and Indemnification

Finally, the City moves to dismiss Counts VII and VIII on the basis that Jackson's claims against the Officer Defendants are untimely or otherwise improper and subject to dismissal, and therefore there is no basis to impose vicarious liability on the City. However, given the Court's conclusions above with respect to the claims against the Officer Defendants, dismissal of Counts VII and VIII is unwarranted. The City's Motion to Dismiss with respect to Counts VII and VIII is denied.

## CONCLUSION

For the foregoing reasons, the Officer Defendants' Motion to Dismiss [ECF No. 20] is denied, and the City's Motion to Dismiss [ECF No. 27] is granted in part and denied in part as set forth above. Status is set for 9/30/2021 at 10:50 a.m. It is so ordered.

Dated: 8/21/2021

Charles P. Kocoras
United States District Judge